POWDER RIVER LIVE STOCK COMPANY v. CHARLES
L. LAMB.

FILED NOVEMBER 21, 1893.   No. 4730.

1. **Statute of Frauds:** A VERBAL CONTRACT, to be void under
the first clause of section 8 of our statute of frauds, must be one
that, by its terms, is not to be performed within one year from
the making thereof.  The statute does not refer to such con-
tracts as may possibly or probably not be performed within that
time.

2. **An oral agreement** entered into in October, 1886, for the sale
and delivery by plaintiff to defendant of a quantity of corn of
more than $50 in value, by the terms of which the seller was to
receive the market price paid for corn in the county on any day
between the time of delivery and May, 1888, is not within the
8th section of our statute of frauds, since performance within
one year is possible.

3. **Oral Contract of Sale.**  Under section 9, chapter 32, Compiled
Statutes, an oral contract for the sale and delivery of personal
property of over $50 in value, no part of which has been accepted
or received by the buyer, is invalid where no part of the pur-
chase money was paid at the time the contract was entered into,
and where no note or memorandum of the contract was made in
writing, and subscribed by the party to be charged thereby.

4. **A delivery alone by the vendor** is not sufficient to take the
contract out of the statute, but there must also be a receipt and
acceptance of the thing sold by the vendee, to have that effect.

5. **In an action upon a contract within the statute of
frauds,** the petition must state facts taking the contract out of
the statute, or the pleading will be demurrable.

6. **Contract of Sale:** STATUTE OF FRAUDS: PLEADING.  Under
a general denial of the allegations in a petition upon a parol
agreement for the sale and delivery of personal property, void
under the statute, the defendant may avail himself of the de-
fense that such agreement is invalid under the statute of frauds.

7. **The general agent or manager** of a corporation carrying on
the business of raising and feeding of cattle is presumably em-
powered to purchase feed for the stock belonging to the cor-
poration.

8. **Quantum Meruit**: SPECIAL CONTRACT. A party cannot recover upon a *quantum meruit* where he pleads and relies on the trial solely upon a special contract.

9. **Erroneous Instructions**: HARMLESS ERROR: REVIEW. This court will not reverse a judgment for the giving of an erroneous instruction, where it appears that the party complaining was not prejudiced thereby.

10. **Trial**: REFUSAL TO GIVE PROPER INSTRUCTION: REVIEW. It is reversible error to refuse an instruction containing a correct proposition of law applicable to the issues in the case, the principles of which have not been covered by the charge of the court.

ERROR from the district court of Stanton county. Tried below before POWERS, J.

The opinion contains a statement of the case. ·

*C. C. McNish* and *Allen, Robinson & Reed*, for plaintiff in error:

The answer of the defendant denies the several allegations of the petition and presents the question of the statute of frauds as one of the issues in the case. By the general denial the defendant had a right to avail itself of the invalidity of the agreement under the statute of frauds. It was unnecessary to plead the statute as a special defense. (Browne, Statute of Frauds [3d ed.], sec. 511; 8 Am. & Eng. Ency. Law, 747, note 2; *Berrien v. Southack*, 7 N. Y. Supp., 324; *Fountaine v. Bush*, 41 N. W. Rep. [Minn.], 465; *Tatge v. Tatge*, 34 Minn., 272; *Smith v. Theobald*, 5 S. W. Rep. [Ky.], 394; *Wiswell v. Tefft*, 5 Kan., 263; *Bonham v. Craig*, 80 N. Car., 224; *Morrison v. Baker*, 81 N. Car., 76; *Amburger v. Marvin*, 4 E. D. Smith [N. Y.], 393; *Harris v. Knickerbacker*, 5 Wend. [N. Y.], 638.)

A party cannot recover on *quantum meruit* under an allegation setting up a special contract. (*Eyser v. Weissgerber*, 2 Ia., 463; *Freher v. Geeseka*, 5 Ia., 472; *Formholz v. Taylor*, 13 Ia., 500.)

The court erred in giving conflicting instructions. (*Wasson v. Palmer*, 13 Neb., 376.)

The court erred in refusing to give the twelfth instruction asked by the defendant. (*Severance v. Melick*, 15 Neb., 614; *Housel v. Thrall*, 18 Neb., 488.)

*W. W. Young*, and *John A. Ehrhardt*, contra:

If the court erred in overruling the demurrer to the petition, defendant waived the error by answering over, and going to trial upon the merits. (*Pottinger v. Garrison*, 3 Neb., 223; *Mills v. Miller*, 2 Neb., 308; *Harral v. Gray*, 10 Neb., 188; *Dorrington v. Minnick*, 15 Neb., 400; *Buck v. Reed*, 27 Neb., 70.)

The defense that a contract is within the statute of frauds, to be available to defendant, must be specially pleaded. (*Lawrence v. Chase*, 54 Me., 196; *Graffam v. Pierce*, 143 Mass., 386; *Brigham v. Carlisle*, 78 Ala., 243; *Martin v. Blanchett*, 77 Ala., 288; *Guynn v. McCauley*, 32 Ark., 97; *Trapnall v. Brown*, 19 Ark., 39; *Peet v. O'Brien*, 5 Neb., 362.)

A contract is not void by the statute of frauds, as an agreement not to be performed within a year from the making thereof, if the performance of it depends upon a contingency which may happen within the year, although in fact it does not happen until after the expiration of the year. (*McCormick v. Drummett*, 9 Neb., 388; 8 Am. & Eng. Ency. Law, 690, notes 1, 2.)

NORVAL, J.

This was an action commenced by Charles L. Lamb to recover of plaintiff in error $1,849.15 and interest thereon, as a balance due for a quantity of corn alleged to have been sold and delivered by plaintiff to defendant. The amended petition upon which the case was tried alleges:

"1. That said defendant is a corporation duly organized

and existing under the general laws of the state of Colorado, and doing business in Stanton county, Nebraska.

" 2. That some time in the month of October, 1886, the precise date whereof the plaintiff is unable to more specifically state, the plaintiff and defendant entered into a verbal contract, by the terms of which the plaintiff sold to said defendant above named all the corn that he then had on hand, including the crop of corn then standing in the fields of the plaintiff; and in consideration of the sale and delivery of said corn to the defendant, the said defendant agreed to pay the plaintiff the market price per bushel paid for corn in the said county of Stanton, in the state of Nebraska, on any day, to be selected by the plaintiff, between the time of delivery of said corn and the month of May, 1888, and on the day so selected by the plaintiff the amount then due the plaintiff should at once become due and payable.

" 3. That in pursuance of said contract the plaintiff delivered to the defendant in the month of November, 1886, 143 bushels and 35 pounds of ear corn; and from the 21st day of December, 1886, to the 5th day of April, 1887, 782 bushels and 30 pounds of ear corn; and on the 30th day of December, 1886, 1,259 bushels of shelled corn; and in the month of January, 1887, 5,090 bushels of shelled corn and 25 pounds; and that the total number of bushels sold and delivered amounted in the aggregate to 7,275 bushels; and the plaintiff states that he is unable to more fully state the time and the amount of the delivery of said corn than in this paragraph stated.

"4. On the 1st day of February, 1888, the plaintiff, in order to fix and establish the price to be paid by the defendant for the corn delivered as aforesaid, served notice on the defendant that he had selected the market price per bushel paid for corn in Stanton county, Nebraska, on that date, to-wit, the 1st day of February, 1888.

" 5. That the market price paid for corn on the said 1st

day of February, 1888, in Stanton county, Nebraska, was thirty-five cents per bushel.

"6. That on the 4th day of January, 1887, the defendant advanced to the plaintiff on said corn, the sum of two hundred (200) dollars, and on the 12th day of January, 1887, the further sum of four hundred and fifty (450) dollars, for which money so advanced the plaintiff afterwards agreed to pay the defendant interest thereon until the date of the selection of the market price per bushel to be paid for said corn.

"7. That there is due from the defendant to the plaintiff for the said corn, so delivered under the terms of said contract, the sum of two thousand five hundred and forty-six and twenty-five one-hundredths (2,546.25) dollars, no part of which has been paid, except the said sum of $650, which with the interest thereon, as agreed between plaintiff and defendant, amounts to the sum of $697.10.

"8. That after allowing to the defendant all just credits, there is still due and unpaid from the defendant to the plaintiff the sum of one thousand and eight hundred forty-nine and fifteen one-hundredths (1,849.15) dollars, together with the interest thereon, at the rate of seven per cent from the said 1st day of February, 1888."

The defendant interposed a general demurrer to the amended petition, which was overruled by the court, and an exception was taken to the decision. The defendant then filed an answer alleging:

"1. That on or about the 24th day of December, 1886, L. R. Crosby, as the general manager of the feeding department of said defendant, made an oral agreement with said plaintiff, whereby the said plaintiff was to sell and deliver at the ranch of defendant in Stanton county, Nebraska, all the corn and oats that he then owned near Pilger, and two car loads of corn to be shipped from Stanton, and said defendant agreed to pay said plaintiff for said corn and oats the average market price between the Stanton and

Pilger market on the day that said plaintiff selected and called for his money, between about the 24th day of December, 1886, and the 1st day of May, 1887, and that said plaintiff was to reduce said contract to writing in duplicate and sign them, and forward them to said L. R. Crosby for the same to be signed by said defendant, and one to be returned to said plaintiff.

" 2. That said plaintiff failed and neglected to reduce said contract to writing, as agreed, and there is no note or memorandum of said agreement as required by law.

" 3. That in accordance with said oral agreement made on or about the 24th day of December, 1886, with said L. R. Crosby for said defendant, the said plaintiff delivered at the ranch of said defendant, in Stanton county, Nebraska, at various dates, a total of nine hundred and twenty-five (925) bushels and sixty-five (65) pounds of ear corn; and six thousand three hundred and forty-nine (6,349) bushels and thirty-five (35) pounds of shelled corn; and nineteen hundred and ninety-four (1994) bushels and twenty-seven (27) pounds of oats.

" 4. That on the 25th day of April, 1887, in accordance with the contract made on or about the 24th day of December, 1886, the said plaintiff had a settlement with said defendant as to the oats, and on said date defendant paid said plaintiff for said oats the sum of $359.10.

" 5. That on the 4th day of January, 1887, the said defendant loaned to said plaintiff the sum of $200, and on the 12th day of January, 1887, said defendant loaned said plaintiff the further sum of $450; and said plaintiff agreed to pay said defendant interest on said money, and that the same was to be settled and adjusted and deducted from amount that defendant might owe the plaintiff.

" 6. The defendant, in further answer to the petition of the plaintiff, admits the allegation contained in paragraph 1 of said petition; but as to all other paragraphs in said petition it denies each and every allegation therein contained."

For reply, the plaintiff admits that he delivered the quantity of oats and corn stated in the answer; denies that the same were delivered under the contract set up by the defendant in its answer; alleges that the oats and corn were sold and delivered under separate and distinct contracts; denies each and every other allegation set forth in the answer.

The action was tried in the court below to a jury, who returned a verdict in favor of the plaintiff for $2,142.38. The plaintiff filed a remittitur of $1.25, and the court overruled the defendant's motion for a new trial, and entered judgment in favor of plaintiff upon the verdict of the jury. The defendant brought the case to this court for review by proceeding in error.

The defendant objected in the district court to the introduction of any evidence in the case, for the reason that the contract stated in the petition is within the statute of frauds, and is therefore void, which objection was overruled by the court. The plaintiff thereupon introduced evidence tending to prove every allegation of the petition, and rested. The testimony on behalf of the defendant tended to establish that the contract entered into between the parties relating to the sale and purchase of the corn, is the one pleaded in the answer; that the corn was delivered by the plaintiff to the defendant under said agreement, and that corn at the time the same was delivered, as well as in May, 1887, was worth on the market in Stanton county twenty cents per bushel. The court, at the request of the defendant, submitted to the jury special findings, which were answered by them and returned with their general verdict. By the third finding they found that the contract between the parties was as claimed by the plaintiff, and that the corn was delivered thereunder.

The most important question presented for our consideration is whether or not the contract set out in the petition is within the statute of frauds.

Section 8 of chapter 32 of the Compiled Statutes declares that " In the following cases every agreement shall be void unless such agreement, or some note or memorandum thereof, be in writing, and subscribed by the party to be charged therewith: First—Every agreement that by its terms is not to be performed within one year from the making thereof. Second—Every special promise to answer for the debt, default, or misdoings of another person. Third— Every agreement, promise, or undertaking made upon consideration of marriage, except mutual promises to marry. Fourth—Every special promise by an executor or administrator to answer damages out of his own estate."

The contention of the plaintiff in error is that the contract declared on is void under the first subdivision of the section above quoted, and that the same is not actionable or enforceable in the courts, for the reason the agreement rested solely in parol, and was not to be performed by either party within the period of one year from the date of the making of the same.

The defendant in error in his argument insists that the agreement in question does not fall within the clause of the section already mentioned; that the statute only applies to executory contracts, and not one which has been fully performed on one side. The authorities upon the question are divided. Some of the courts of the country hold that an action cannot be maintained upon a parol agreement, which by its terms is not to be performed within a year, even though made upon a valuable consideration fully executed, while other courts of equal standing and ability lay down the doctrine that full performance on one side takes the contract out of the statute, and that it is enforceable. We are not now called upon to examine the conflicting decisions, or to determine which is the true doctrine, as the question does not necessarily arise in this case. If we are able to comprehend the force and effect of the agreement in question, it is not within the scope of the statutory

provision set out above.   A contract, in order to be within
the purview of said section, must be such that, by its
terms, cannot be performed within one year from the mak-
ing thereof.   The statute does not include a verbal
agreement which may possibly or probably not be per-
formed within a year, nor does it apply to a parol con-
tract, in the terms of which there is nothing inconsistent
with a full and complete performance within such period.
When a contract, not in writing, by its terms, or by any
fair and reasonable construction of its provisions, is capa-
ble of being performed within a year, it is not within the
statute.   This was settled by the adjudications in this court
in *McCormick v. Drummett*, 9 Neb., 388; *Connolly v. Gid-
dings*, 24 Neb., 131, and *Kiene v. Shaeffing*, 33 Neb., 21,
and it is unnecessary to refer to the decisions of other
courts sustaining the doctrine of our own cases.

Let us examine and see whether the agreement alleged
and proved was capable of performance within a year from
the time the same was entered into.   The plaintiff below
sold to the defendant all of his corn, including the crop
then in the field.   The contract contained no stipulation
as to the time when the corn should be delivered to the de-
fendant.   True, by the terms of the agreement, plaintiff was
to receive for the corn the market price paid for such grain
in Stanton county on any day that should be thereafter
designated by him between the time of delivery and May,
1888, but this provision did not bring the contract within
the statute.   Although the agreement was not performed
within a year from its making, as regards the selection of
the date upon which to fix the price the seller should re-
ceive for the corn, yet there was nothing in the terms
thereof which prevented it from being performed within
the year.   Under the terms of the agreement, plaintiff had
a perfect right, had he so desired, to have selected such date
at once, and without delay, even on the next day after the
corn was delivered.   It was entirely optional with him to

do so or not. The agreement was therefore capable of performance within a year from its making, and is not void by reason of the statute under consideration. No case can be found reported in the books, in the opinion of the writer, of similar facts, where it has been held that such a contract was within the purview of the statute. On the contrary, the doctrine established by the adjudications of this country is that, in order to bring a case within the operation of the statute of frauds, there must be an express and specific stipulation in the contract that it is not to be performed within the year, or it must appear therefrom that it was not the intention of the parties the agreement should be performed within that period. (*Supra; Treat v. Hiles*, 32 N. W. Rep. [Wis.], 517; *Baker v. Lauterback*, 11 Atl. Rep. [Md.], 703; *Aiken v. Nogle*, 47 Kan., 96; *Durham v. Hiatt*, 127 Ind., 514; *Kent v. Kent*, 62 N. Y., 560; *Barton v. Gray*, 57 Mich., 622; *Horner v. Frazier*, 4 Atl. Rep. [Md.], 133; *Smalley v. Greene*, 3 N. W. Rep. [Ia.], 78.)

The next contention of plaintiff in error is that the contract is void under section 9 of said chapter 32, which is in the following language:

"Sec. 9. Every contract for the sale of any goods, chattels, or things in action, for the price of fifty dollars or more, shall be void unless: First—A note or memorandum of such contract be made in writing, and be subscribed by the party to be charged thereby; or, Second—Unless the buyer shall accept and receive part of such goods, or the evidences, or some of them, of such things in action; or, Third—Unless the buyer shall, at the time, pay some part of the purchase money."

The contract declared upon in the amended petition is a verbal one for the sale of a quantity of corn exceeding in value the sum of $50. No part of the purchase money was paid at the time the contract was entered into. This is conceded; but the plaintiff below insists that the stipulations in the contract have been fully performed on his part;

hence, the statute of frauds does not attach. The delivery of the corn by the plaintiff to the defendant is averred in the petition, but it is nowhere alleged in the pleading that the defendant accepted or received any part thereof. A delivery alone by the vendor of the thing sold is insufficient to take a parol contract for the sale of goods, of the price of $50 or more, out of the statute, but there must also be a receipt and acceptance by the buyer of at least a part of such goods under and in pursuance of the terms of the contract. In Reed on the Statute of Frauds, vol. 1, sec. 262, the author says: "There must be both delivery and acceptance; and both of the parties must partake in the same act. * * * And it has been said that certainly unless accept means no more than received, as surely it must, for otherwise the word 'deliver' would of itself have sufficed, acceptance must mean some act or conduct on the part of the buyer indicating an intention to retain the goods, or such as reasonably to lead the seller to suppose so. To constitute acceptance two acts are necessary: The goods must be accepted and actually received. No act of the seller will amount to acceptance."

The doctrine of the text is amply sustained by numerous judicial decisions. See the following authorities: *Ex parte Parker*, 11 Neb., 309; *Caulkins v. Hellman*, 47 N. Y., 449; *Smith v. Brennan*, 62 Mich., 349, 28 N. W. Rep., 892; *Hansen v. Roter*, 25 N. W. Rep. [Wis.], 530; *Jamison v. Simon*, 8 Pac. Rep. [Cal.], 502; *Fontaine v. Bush*, 40 Minn., 141; *Simmons Hardware Co. v. Mullen*, 33 Minn., 195; *Taylor v. Mueller*, 15 N. W. Rep. [Minn.], 413.

In *Ex parte Parker*, *supra*, this court quoted with approval the following language used by the New York court in the opinion in *Caulkins v. Hellman*, 47 N. Y., 449: "No act of the vendor alone in performance of a contract void by the statute of frauds can give validity to such contract. * * * Where a valid contract of sale is made in writing, a delivery pursuant to such contract will pass the title

at the place agreed upon for delivery, or a shipment of the goods in conformity with the terms of the contract will pass the title to the vendee without any acceptance of the goods by him. But if the contract is oral, and no part of the price is paid by the vendee, there must be not only a delivery of the goods by the vendor, but a receipt and acceptance of them by the vendee to pass the title, or make the vendee liable for the price."

Acceptance is the receipt of a thing with the intention to retain it. In order to constitute a binding acceptance under a contract for the sale of personal property, invalid by the statute of frauds, there must be some equivocal act on the part of the purchaser showing an intention to accept and appropriate the property as owners. (*Stone v. Browning*, 68 N. Y., 601; *Simpson v. Krumdick*, 28 Minn., 355; *Taylor v. Mueller*, 15 N. W. Rep. [Minn.], 413.) In a suit upon a contract within the statute of frauds, the petition must state facts taking the contract out of the statute, or the pleading will be demurrable. (*Babcock v. Meek*, 45 Ia., 137; *Burden v. Knight*, 82 Ia., 584.) The conclusion is irresistible that the allegation of the delivery of the corn is not sufficient to take the contract out of the operation of the statute, and therefore the demurrer to the amended petition should have been sustained.

It is urged that the defendant waived its exception to the ruling on the demurrer by answering to the merits. Conceding this point to be well taken, still the question of the statute of frauds was repeatedly raised during the trial on the introduction of testimony to establish the contract and to show the defendant accepted the corn under the terms of the parol agreement. This evidence was admitted over the objection of the defendant that it is not alleged in the petition that it accepted or received any part of the corn sued for, and that the contract was void under the statute. This evidence was clearly inadmissible, without the pleading was amended. It is a fundamental rule that the *allegata et probata* must agree.

It is claimed that the statute of frauds is not available as a defense in this case for the reason that it is not set up in the answer. The defendant, in its pleading, denies the making of the contract upon which the action was brought; sets up an entirely different agreement for the purchase and sale of the corn. There was no waiver of the statute by the failure to plead it as a special defense. Under the general denial, the defendant had the right to avail itself of the invalidity of the agreement under the statute of frauds. The plaintiff, in order to recover, was obliged to prove his contract substantially as alleged, and a receipt and acceptance of the corn under it. (Browne, Statute of Frauds, sec. 511; *Russell v. Wisconsin, M. & P. R. Co.*, 39 N. W. Rep. [Minn.], 302; *Cosand v. Bunker*, 50 N. W. Rep. [S. Dak.], 84; *Tatge v. Tatge*, 34 Minn., 272; *Taylor v. Allen*, 40 Minn., 433; *Fontaine v. Bush*, 40 Minn., 141; *Berrien v. Southack*, 7 N. Y. Supp., 324; *Smith v. Theobald*, 5 S. W. Rep. [Ky.], 394; *Wiswell v. Tefft*, 5 Kan., 263; *Bonham v. Craig*, 80 N. Car., 224; *Popp v. Swanke*, 68 Wis., 364.)

The last was an action to enforce specifically the performance of an oral agreement for the sale of land. The defendant neither pleaded the statute of frauds, nor objected to the admission of evidence on the trial, because the contract was within the statute, but at the close of the trial requested the court to find as a fact that the contract rested in parol, and, as a conclusion of law, that it was void. It was held that the question of the validity of the agreement was sufficiently raised. There are a few cases which hold that the statute of frauds must be specially pleaded to be available, some of which are cited in the brief of defendant in error, but the decided weight of the decisions, as well as the better reason, is the other way.

We will next notice an assignment of error based upon a ruling of the court on the introduction of the testimony. The plaintiff below was permitted to prove, over objections

of the defendant, that the contract upon which the action was brought was made with the defendant through its general manager, J. A. Brown. It is insisted that this testimony was inadmissible until it had first been shown that Brown had authority to make such a contract. We do not agree with counsel in this proposition. It had been shown, by competent evidence, that Mr. Brown was the general manager of the defendant corporation, before any attempt was made to prove the contract entered into by him for his company for the purchase of the corn. Therefore, it was unnecessary to show that he had authority to make the contract, the presumption being that he was invested with such power.

Complaint is made of the giving of the fourth paragraph of the court's charge to the jury, which is as follows:

"4. The defendant in *his* (its) answer denies the making of the contract sued on, and alleges that the price agreed to be paid for the corn purchased of the plaintiff was the average market price between Stanton and Pilger markets, in said county, on a day to be selected by the plaintiff, between December 24, 1886, and May 1, 1887."

The above was one of several instructions given, stating the issues in the case, and, when taken in connection with the other instructions, was not misleading. It clearly, and in concise language, stated to the jury one of the issues presented by the pleading and the evidence.

Exception was taken to the giving of the following instruction:

"8. But if you find that there was no agreement made as to the price the plaintiff was to receive for said corn, then you should award him for the corn received by the defendant, and unpaid for, the fair market value of the same at the time of its delivery as shown by the evidence, if any such evidence is before you, with interest thereon from the time of its delivery, at the rate of seven per cent per annum."

This instruction should not have been given. The action is grounded upon an express contract. The petition contains no allegation of a *quantum meruit*. Where a contract for the sale of personal property is void under the statute of frauds, and there has been a delivery of the thing sold to the purchaser and an acceptance thereof by him, the plaintiff may recover the reasonable value of the property, if his petition is so framed; but a party cannot recover on a *quantum meruit*, where he pleads and relies solely upon a special contract. (*Eyser v. Weissgerber*, 2 Ia., 463; *Freher v. Geeseka*, 5 Ia., 472; *Formholz v. Taylor*, 13 Ia., 500; *Imhoff v. House*, 36 Neb., 28.)

The instruction under consideration was in direct conflict with instruction No. 5, given by the court, which told the jury that "before the plaintiff is entitled to a verdict for the amount sued for, it is incumbent upon him to prove by a preponderance of the evidence that he made the contract with the defendant as alleged, whereby the defendant agreed to pay the plaintiff the market price of the corn in Stanton county on a day selected by him between the time of delivering the same and the first of May, 1888." By the one instruction the jury were informed that the plaintiff could only recover in case the evidence established a special contract, while by the other they were told he was entitled to the market value of the corn, even though there was no stipulation as to the price he was to receive therefor. These conflicting statements of the law before the jury left them in doubt as to the paragraph upon which they should rely. It should be stated that instruction No. 8 was predicated upon evidence introduced by the defendant and against the objection of the plaintiff below, showing the market value of the corn at the time of its alleged delivery. We are persuaded, however, that the defendant was not in the least prejudiced by the giving of this instruction, since had the jury, in arriving at their verdict, allowed the plaintiff the market value of the corn, the recovery would have been

27

scarcely one-half the sum stated in the verdict. It is obvious that the recovery was upon the basis of the special contract alleged by the plaintiff.

The defendant asked, and the court refused to give, the following instruction:

"12. If the contract claimed by the plaintiff, in his petition, was wholly oral, that is, by word of mouth, and no part of the purchase money was paid, or no part of the corn was delivered thereunder, then the plaintiff has failed to make out his case, and your verdict must be for the defendant. And there would be no such delivery of the corn to the defendant if the plaintiff simply stored his corn, or a part of it, in the defendant's crib, under an arrangement whereby it was to remain his property until such time as he saw fit to sell it to the defendant."

This request to charge correctly states the law relating to the statute of frauds, which was one of the questions in the case, and should have been submitted to the jury. It was not covered by any instruction given, and it was error to refuse it. (*First Nat. Bank of Madison v. Carson*, 30 Neb., 104.)

There are other errors assigned upon the giving and refusing of instructions, which need not be noticed.

The judgment of the district court is reversed, and the cause remanded for further proceedings, with leave to the plaintiff to amend his petition, if he so desires.

REVERSED AND REMANDED.